## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARSHALL JONES ADMINISTRATOR | : | CIVIL ACTION NO. |
| OF THE ESTATE OF ASHLEY FERGUSON, | : | 3:18-cv-00485-VAB |
| MARSHALL JONES, AALIYAH JONES, PPA | : | |
| MARSHALL JONES, MICHAEL JONES, PPA | : | |
| MARSHALL JONES | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS MARCU, MGR FREIGHT SYSTEM, INC., | : | |
| PLAN BETA, LLC, AND TOTAL QUALITY | : | |
| LOGISTICS, LLC | : | |
| | : | |
| Defendants | : | JUNE 12, 2018 |

### REPLY MEMORANDUM IN RESPONSE TO PLAINTIFFS' OBJECTIONS TO TQL'S MOTION TO DISMISS

COMES NOW the Defendant, TQL, Inc. ("TQL" or "Defendant"), by and through its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rules 7.2 and 56.1, and all other applicable law and submit this Reply Memorandum in Support of its Motion to Dismiss (ECF No. 25) and respectfully request this Honorable Court grant this motion; and in support would state as follows:

### I.    LAW AND ARGUMENTS

**A.    This matter is distinguishable from the case law relied upon by Plaintiffs to advance their misguided argument that Plaintiffs' claims are not preempted under FAAAA.**

Plaintiffs point to the recent decision in *Krauss v. IRIS USA, Inc.,* in their assertion that personal injury claims are not preempted. Plaintiffs conveniently fail to address the fact that the *Krauss* court in the end found that FAAAA preempted the personal injury claims against C.H. Robinson. *See Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839 (E.D. Pa May 3, 2018).

C.H. Robinson (the broker) in this case, argued that FAAAA expressly preempted any state law that affects a broker's routes, prices or services. C.H. Robinson asked the court to dismiss the personal injury claims against it because it affected the services it provided by arranging for freight services through various carriers. The Court acknowledged that the case law was "sparse." Stating that "[n]o federal appellate court 'has addressed whether a personal injury claim against a broker based on negligent hiring is preempted.' (*Krauss*, 2018 WL 2063839 at *4)(*citing Mann v. C.H. Robinson Worldwide, Inc.,* No. 7:16-CV-102, 2017 WL 3191516, at *6 (W.D. Va. July 27, 2017)). The *Krauss* Court acknowledged that 3 of 4 courts found that personal injury claims are not preempted by FAAAA, but found that one court has. (*See Volkova v. C.H. Robinson Co.,* No. 16-1883, 2018 WL 741441, at *1–2 (N.D. Ill. Feb. 7, 2018*) (claim from personal injury sustained in truck accident was preempted).

The *Krauss* court concluded that

> [I]t is more true to persuasive precedential and common-sense analysis to hold that the claim for personal injuries arising out of the shipment in this case is preempted. As explained above, the FAAAA preempts state laws "related to" a "service" of any broker "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Transportation is defined to include "services related to" the "movement of passengers or property," including "arranging for" the movement. Id. § 13102(23). This statutory text means that the FAAAA preempts state laws "having a connection with, or reference to" carrier rates, routes, and services "Such a connection exists," for present purposes, "where it has a forbidden significant effect" on rates, routes, or services. This analysis is fact-specific. (internal citations omitted)

*Krauss*, 2018 WL 2063839, at *5. The Court concluded that the negligent hiring claim against C.H. Robinson is that Mr. Krauss' injuries directly flowed from C.H. Robinson's failure to vet the motor carrier. As a result, the claim related to the core service provided by C.H. Robinson as a broker and was therefore preempted. *Id.*

*Volkova* and *Krauss*, both stand for the most recent trend giving force and effect to the protection of interstate commerce. Accordingly, this Court should find that the Plaintiffs' claims against TQL are preempted under FAAAA.

### B.      Plaintiffs Distort Fundamental FAAAA Principles.

Plaintiffs distort several fundamental FAAAA principles. FAAAA preemption applies to such laws if they relate to a broker's price, route or service. Plaintiffs argue that their claims do not relate to the services offered by TQL, but rather relate to issues of highway safety. Plaintiffs' own statement of facts undercuts the argument. Plaintiffs assert that the claims arise out of TQL's negligent selection of MGR as a motor carrier and Marcu as a driver for the load. They further assert that if TQL had implemented certain standards for selecting a motor carrier, Marcu would have likely not been on the roadways. In direct contradiction, Plaintiffs contend that its claims are not preempted because the claims involve issues of highway safety, and not of rates routes, or services. (*See* Pls.' Memo. Opp. to Mot. to Dismiss  6-10, ECF No. 33).

Plaintiffs cannot have both sides of this argument. Plaintiffs' claims are based on the allegation that the standards put in place to select a motor carrier by TQL are in violation of "Connecticut General Statutes, Code of Federal Regulations and common law duties regarding safe operation of a motor vehicle, proper hiring and proper training."(*Id.* at 9). Plaintiffs are, in essence, asserting that TQL should have done more in the selection process. Plaintiffs are seeking to regulate TQL services. However, the FAAAA preempts state laws regulating services. For example, in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 370, 370-71 (2008), the Supreme Court found that the FAAAA preempted a law requiring a carrier delivering a package containing tobacco products to undertake certain verification steps prior to delivery.  As the Court recognized, the law was preempted because it related to the carrier's services: "The Maine law

thereby produces the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." *Id*. at 372.  In other words, "the effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." *Id*.  It thereby "regulates a significant aspect of the motor carrier's package pickup and delivery service." *Id*. at 373.

Plaintiffs seek to impose the responsibilities of a motor carrier in investigating the background of its drivers upon a broker. This imposition conflicts with the federal government's recognition of the distinction between motor carriers and brokers. For example, under 49 C.F.R. § 391.2, the federal government mandates that a person shall not drive a commercial motor vehicle unless he or she has "furnished the motor carrier that employs him/her" with an application that includes a statement setting forth in detail the facts and circumstances of any suspension of a license or privilege to operate a motor vehicle. *See* 49 CFR § 391.2. The motor carrier is also responsible for establishing and implementing adequate management controls to ensure safe performance of commercial motor vehicles operating under the motor carrier's DOT authority. *See* 49 CFR § 385.5. The motor carrier is also responsible for hiring and qualifying its drivers pursuant to federal regulatory standards. *See* 49 CFR § 391.23. Moreover, the obligations to investigate and inquire into the background of each driver specifically belongs to the motor carrier. *See* 49 CFR § 391.23. None of these federal regulations require a broker to investigate or inquire into the background of the driver of a motor carrier. Asking TQL to change the standard by which it qualifies motor carriers would directly affect the services offered by its business.

If TQL, as a broker, was required to perform these additional duties that already belong to

a motor carrier, the pricing, routes and services that TQL provides to its customers would be impacted. Assuming this is an industry-wide expectation, and costs are passed along to shippers and carriers by increased prices charged for brokerage services, and ultimately by the consumer, it would have a significant effect on interstate commerce.

To impose a burden on brokers to come up with its own criteria to select an appropriate carrier to transport a load, beyond that set by the FMCSA would result in a complete failure of logic. For example, a motor carrier, licensed, authorized and insured, pursuant to federal law to carry property on the nation's highways, may do so for a shipper without further inquiry,[1] but if it chooses to accept transportation arrangements through brokers, it must go through a rigorous additional qualification process. It is just this sort of illogical result the FAAAA seeks to prohibit by preempting the field. *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d at 82 at n. 14 (1st Cir. 2006).

The FAAAA preempts plaintiffs' claims against TQL because regardless of the claim, each of them require a result which would, if implemented, significantly impact TQL's prices, routes, and services, and "regulate interstate transportation of goods." *Huntington Operating Corp.*, 2010 WL 1930087 *3. Plaintiffs' claims if successful, would also result in inconsistent and non-uniform state laws as to agency and negligence, in violation of Congress' intent to de-regulate the trucking industry. TQL is therefore entitled to dismissal of all of Plaintiffs' claims as preempted by the FAAAA.

## C.      Public Policy and FAAAA Preemption

Congress' main goal in passing FAAAA was to "ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces' thereby stimulating 'efficiency, innovation and low prices,' as well as 'variety' and 'quality.' *Rowe,* 522 U.S. at 371.

---

[1] Or a broker from a state that does not impose broker liability.

The intent of preemption under the FAAAA is to avoid a "patchwork of state service-determining laws, rules, and regulations" inconsistent with Congress' major legislative effort to leave such decisions where federally unregulated, to the competitive marketplace. *Id.* at 373.

TQL asks this Court to look at the particular circumstances of this case. Plaintiffs' personal injury claims target the core service of TQL, and should therefore be preempted. Denying this motion would be contrary to the intent of Congress in passing FAAAA. If a Court is allowed to interpret FAAAA a certain way depending on the individual state law, every State would be able to seek an interpretation of its own state law it applies to FAAAA.[2] This Court cannot ignore the intent of Congress and the clear instruction and precedent of other courts faced with similar claims.

### D. Plaintiffs fail to address distinction between Carrier Selection and Traffic Safety.

The Plaintiffs contend that even if their claims are preempted because they relate to routes or services within the meaning of Section 14501(c)(1), the claims are nonetheless saved from federal preemption because they are safety-related. TQL agrees that not all state-law negligence claims against carriers are preempted by the FAAAA. Ordinary personal injury actions which arise from, for example, a driver speeding may not relate to a carrier's routes, rates, or services and, thus, may survive FAAAA preemption. In contrast, the present case seeks to hold TQL liable as a broker based on the way it structures its business and the criteria it uses to select motor carriers to whom it assigns loads.

The claims in this case are not saved by the safety exemption because they are not genuinely related to safety. A review of the Complaint reveals that Plaintiffs seek to ground liability against TQL on the manner in which it interacted with its customer and the methods it

---

[2] For example, this load originated in New Paltz, NY and was to be delivered in Milford, N.H.  Which state's carrier hiring requirements should the Court apply?

used to select the motor carrier. Imposing liability under these circumstances is very different from suing a carrier for the simple negligence of one of its employees. The cases relied on by *Owens, Morales,* and Plaintiffs were right to conclude that these acts of spilling an item from an overhead bin, leaving a package in front of a door, and the like did not relate to--or at most only tenuously related to--a carrier's services. However, the fact that these state-law negligence claims were not preempted as to carriers does not enable Plaintiffs to leap to the conclusion that their claims in the instant case are non-preempted merely because they also are captioned as negligence claims.

When analyzing FAAAA preemption, the court must look beyond the mere label assigned to a cause of action to the "facts underlying the specific claim" to determine whether the claim relates to a route, rate, or service of a carrier. *Smith v. Comair, Inc*., 134 F.3d 254, 259 (4th Cir. 1998); see also *Krauss*, 2018 WL 2063839, at *5. Negligence causes of action against a broker have been dismissed as preempted. *Huntington Operating Corp. v. Subonney Express, Inc.*, 2010 WL 1930087 (S.D. Tex. May 11, 2010); *see generally Krauss,* 2018 WL 2063939; *see generally Volkova*, 2018 WL 741441; *see generally Georgia Nut Co. v. C.H. Robinson Co.*, No. 17-3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017)(Court found FAAAA preempts negligent hiring or retention claims brought against freight brokers if the claims are 'related to the broker's price, route, or service.'). Here, the negligence claims asserted against TQL as a broker are distinct from those asserted <u>against the carriers</u> in the cases Plaintiffs rely on. Because the claims against TQL directly affect the company's structure and activities as a broker, they are preempted by the FAAAA

Plaintiffs' argument for the application of the preemption exception found in 49 U.S.C. § 14501(c)(2)(A) also fails on the text of the exception itself, which indicates that it has no applicability to a state-law negligence claim against a broker under these circumstances. The

exception provides that preemption will not apply to a state's "safety regulatory authority," the authority of a state to impose route or weight limits, and the authority of a state to impose minimum insurance requirements. This language evinces Congress' intent that the exception include state statutes and regulations but not private causes of action. The exemption to preemption in subsection (c)(2)(A) refers narrowly to not restricting a state's "regulatory authority," while, in contrast, the preemption section itself in subsection (c)(1) provides, in broad terms, that a state may not "enact or enforce" any "law, regulation, or other provision having the force and effect of law." Clearly, the sweep of the preemption found in subsection (c)(1) is broader than the exemption found in (c)(2)(A). Congress' deliberate choice of contrasting terms in these two subsections must be given effect. *Airline Pilots Ass'n Intern. v. U.S. Airways Group, Inc*., 609 F.3d 338, 342 (4th Cir. June 23, 2010) (noting that where Congress uses two contrasting terms in close proximity, choice is presumed to be intentional and is to be given effect). Courts examining the application of the exception to private causes of action have readily concluded that it does not apply in that context. In *A.J.'s Wrecker Service of Dallas, Inc. v. Salazar*, 165 S.W.3d 444, 450 (Tex. App.--Dallas), for example, the court concluded,

> The safety exception does not apply to [the plaintiff's] causes of action. The safety exception applies only to specific legislation directed at motor carriers. See Cole v. City of Dallas, 314 F.3d 730, 735 (5th Cir. 2002). [The plaintiff] attempts to apply the safety exception to general causes of action as opposed to legislation directed at the towing industry. We conclude the safety exception is inapplicable to [the plaintiff's] claims.

Finally, even if the exception found in § 14501(c)(2)(A) applies to private causes of action, it does not apply here because it cannot be said that a negligence cause of action against a broker arises under a state's regulatory authority "with respect to motor vehicles." As set forth above and in TQL's initial memorandum, Plaintiffs' case against TQL rests on the manner in which TQL

conducts its business as a broker; how it selects motor carriers to carry loads; and how it structures its operations. Imposing liability on TQL based on how it conducts its operations and business as a broker cannot, under a fair reading of the statute, constitute the exercise of state regulatory authority "with respect to motor vehicles."

For these reasons, the exception to preemption found in § 14501(c)(2)(A) does not apply here, and Plaintiffs' claims are preempted.

> ### E. <u>Plaintiffs Are Not Without a Remedy In this Matter.</u>

Plaintiffs do in fact have a substantial remedy available for their damages. It is well-settled and undisputed in this case that the FAAAA does not preempt ordinary negligence claims against motor carriers for negligent operation of a motor vehicle. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 231 n. 7 (1995). Federal law also requires motor carriers to maintain insurance of at least $750,000. 49 CFR § 387.9.

As the court noted in *Krauss*, a plaintiff's lack of remedy…does not create a defense to federal preemption. *Krauss*, 2018 WL 2063839, at *7. In *Volkova,* the court "recognize[d] the devastation caused by the accident" and "certainly sympathize[d]" with the plaintiff, but it concluded that it was bound by the Supreme Court's decision in *Rowe*—regardless of how "dangerous" the defendant's conduct or "the importance of the public health objective." *Volkova*, 2018 WL 741441, at *4 (quoting *Rowe*, 552 U.S. at 374). The court further observed that the plaintiff "may and has sought recourse" against the carrier and driver in the case. *Id*. As is the case here, Plaintiffs have sought recourse against the Driver (Marcu) and the Carrier (MGR), as such there still remains a viable avenue for Plaintiffs to recover for their claims.

> ## II. <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in the adopted and incorporated pleadings referenced herein, TQL, Inc. prays that its Motion to Dismiss be granted, and that the Plaintiffs' claims against it be dismissed with prejudice.

Respectfully submitted,

THE DEFENDANT,
TOTAL QUALITY LOGISTICS, LLC
BY ITS ATTORNEYS,

s/Robert D. Moseley

_____

Robert D. Moseley, Jr.
Federal Bar No. (phv09064)
Smith Moore Leatherwood LLP
2 West Washington Street
Suite 1100
Greenville, SC 29601
(864)751-7643
Fax:(864)751-7800

Kevin R. Kratzer, Esq.
Federal Bar No. (ct28871)
kkratzer@boyleshaughnessy.com
Boyle Shaughnessy Law, P.C.
280 Trumbull Street, 22nd Floor
Hartford, CT 06103
(860) 952-9800
Fax: (860) 278-7757
*Attorneys for defendant TQL, Inc.*

## **CERTIFICATION**

I hereby certify that on this date, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/Kevin R. Kratzer

Kevin R. Kratzer, Esq.